**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

WEST VIRGINIA LABORERS' PENSION
TRUST FUND, et al.,

                Plaintiffs,

v.                              CIVIL ACTION NO.   2:12-cv-00689

ACCURATE PRO-CUT LLC, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the plaintiffs' Motion for Sum Certain Default Judgment by the Court Against Accurate Pro-Cut LLC [Docket 38]. For the reasons discussed below, the motion is **DENIED.** For the reasons stated below, the court **SCHEDULES** a hearing to facilitate default judgment for October 1, 2014 at 10:00 a.m.

I.      **Background**

      **A. Factual Background**

This action arises from the defendants Accurate Pro-Cut, LLC and Kelli J. Ross's failure to pay contributions and deductions to the plaintiffs and to submit to an audit as required by the parties' collective bargaining agreements. The plaintiffs bring their claims under the Employee Retirement Income Security Act of 1974 ("ERISA") and the Labor Management Relations Act of 1974 ("LMRA").

### i.  The Parties

The plaintiffs are (1) the West Virginia Laborers' Pension Trust Fund; (2); the West Virginia Laborers' Profit Sharing Plan Trust Fund; (3) the West Virginia Laborers' Trust Fund; (4) the West Virginia Laborers' Training Trust Fund; (5) the West Virginia Laborers' Local No. 543; (6) the West Virginia Laborers' Local No. 1085; (7) the West Virginia Laborers' Local No. 1149; (8) the West Virginia Laborers' Employers Cooperation and Education Trust; (9) the West Virginia Laborers Organizing Fund; (10) the West Virginia Laborers' Political League; and (11) the West Virginia Laborers' District Council Political Action Committee.

According to recent briefing by the plaintiffs, the first four plaintiffs meet the definition of "Employee Benefit Plans," as defined by ERISA, and are fiduciaries of those plans. (*See* Br. on Pls.' Standing [Docket 31]). The plaintiffs 5 through 7 are "Unions" as defined by the LMRA. (*See* Compl. [Docket 1] ¶ 3). These unions were entitled to receive employee dues withheld by the defendants from paychecks of participating employees. (*Id.*). The last two plaintiffs are employee funds designated to receive employer contributions and deductions from the defendants. (*Id.*).

Accurate Pro-Cut LLC is a limited liability construction company and an "employer" as defined by ERISA. (*Id.* ¶ 5). Kelli J. Ross is the principal owner, sole member, and sole officer of Accurate Pro-Cut LLC. (*See id.* ¶ 6). The plaintiffs allege that Ms. Ross is the alter ego of Accurate Pro-Cut LLC and thus is an "employer" as defined by ERISA. (Compl. [Docket 1] ¶ 7). The plaintiffs also allege that Ms. Ross is the fiduciary of the plans. (*Id.* ¶¶ 29-39).

### ii.  The Underlying Incident

On January 11, 2005, Accurate Pro-Cut LLC entered into a collective bargaining agreement ("CBA"), identified as the Heavy Highway Agreement, with the Constructors' Labor

2

Council of West Virginia, Inc., the Laborers' District Council, and other designated bargaining agents of the plaintiffs. (*See* Ex. A, Heavy Highway Agreement Acceptance [Docket 38-1[1]], at 1). Ms. Ross signed the Acceptance of Agreement form as "owner/Accurate Pro-Cut LLC." (*Id.*). On the same day, Accurate Pro-Cut LLC entered into another CBA, identified as the Building Construction Agreement, with the Tri-State Contractors Association, the Parkersburg/Marietta Contractors Association, the Ohio Valley Construction Employers Council, Inc. (and other construction employer associations), and the Laborers' District Council of West Virginia as well as other bargaining agents of the plaintiffs. (*See* Ex. B, Building Construction Agreement Acceptance [Docket 6-1]). Ms. Ross signed the Acceptance of Agreement form in her name. (*See id.*).

The CBAs obligate Accurate Pro-Cut LLC to report and pay certain hourly contributions on behalf of its employees who are covered by the CBAs. (Compl. [Docket 1] ¶ 10). The CBAs also obligate Accurate Pro-Cut LLC to report and pay certain deductions that it withholds from its employees' paychecks. (*Id.* ¶ 11). It appears from the Complaint that these deductions include union dues and political action contributions. (*Id.* ¶ 13).

Beginning on June 3, 2011 through March 13, 2012, the plaintiffs requested certain payroll employee records and other information to complete an audit for the period of January 1, 2009 to March 31, 2011. (*Id.* ¶ 14).[2] The defendants refused the plaintiffs meaningful access to these

---

[1] This docket entry contains multiple exhibits, each with their own pagination. The pages cited for this docket entry reflect the pagination of the entire entry rather than the individual exhibits.

[2] The Complaint states that the plaintiffs requested records for the period of January 9, 2009 to March 31, 2010. However, documentation from the CPAs conducting the most recent audit indicate the original request was for the period January 9, 2009 to March 31, 2010. (See Ex. D, Aug. 29, 2014 Payroll Audit [Docket 38-1], at 26).

records. (*Id.*). Prior to 2009, the defendants filed contribution reports for employees Robert Ross, Nick Ledford, and Timothy Flowers. (Pls. Aff. in Supp. of Default J. [Docket 38-1] ¶ 5).

On March 13, 2012, the plaintiffs commenced this action. On April 13, 2012, Kelli J. Ross filed pro se motions to dismiss on behalf of Accurate Pro-Cut LLC and herself. (*See* Mot. to Dismiss by Kelli J. Ross (Pro Se) [Docket 4]; Mot. to Dismiss by Accurate Pro-Cut LLC (Pro Se) [Docket 5]). In my Memorandum Opinion dated August 22, 2012, I denied Kelli J. Ross's motion and struck Accurate Pro-Cut LLC's motion. (*See* Mem. Op. & Order [Docket 15]). Ms. Ross and Accurate Pro-Cut LLC failed to file a responsive pleading within fourteen days after their motions were denied or stricken. Federal Rule of Civil Procedure 12(a)(4)(A) states that a party has fourteen days to serve a responsive pleading after the court denies a motion to dismiss. *See* Fed. R. Civ. P. 12(a)(4)(A).

On November 1, 2012, the plaintiffs filed a motion for default [Docket 16], which was entered by the clerk on May 14, 2013. I scheduled a hearing to facilitate default judgment, but I canceled the hearing to permit briefing on the issue of the plaintiffs' standing under ERISA. (*See* Order [Docket 28]; Order [Docket 29]). After I was satisfied that the plaintiffs had standing to bring this action, I scheduled a hearing for May 29, 2014. On May 27, 2014, the plaintiffs moved to cancel the hearing in part because "testimony [could] be submitted on a later date in the form of affidavits or other written testimony, negating the need for a hearing." (Pls.' Mot. to Cancel the Hearing Scheduled for 5-29-2014 [Docket 33]). The court granted the motion. (*See* Order [Docket 34]).

Approximately two months passed and the plaintiffs had not filed materials in support of default judgment. On August 1, 2014, I directed the plaintiffs to file these materials by August 15,

4

2014. (Order [Docket 35]). However, due to the plaintiffs' counsel's time conflicts, the plaintiffs moved to extend the deadline to September 1, 2014, which I granted. (*See* Order [Docket 37]). On September 1, 2014, the plaintiffs filed the instant motion along with supporting materials.

## II.     Legal Standard

District courts may enter default judgment under Rule 55 of the Federal Rules of Civil Procedure. Under Rule 55(a), entry of default is warranted where "a party against whom a judgment or affirmative relief is sought has failed to plead or otherwise defend[.]" Fed. R. Civ. P. 55. After a default is entered by the clerk, a party may seek default judgment under Rule 55(b). "Although the clear policy of the Rules is to encourage dispositions of claims on their merits, trial judges are vested with discretion, which must be liberally exercised, in entering such judgments and in providing relief therefrom." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) (citations omitted).

Where service is proper, if a party has "failed to plead or otherwise defend," that party is in default and the well-pleaded allegations in the complaint as to liability may be taken as true. *See* Fed. R. Civ. P. 55(a); *Ryan v. Homecomings Fin. Network,* 253 F.3d 778, 780 (4th Cir.2001) ("[T]he defendant, by his default, admits plaintiff's well-pleaded allegations of fact [.]") (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975) (citations omitted)). However, "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

5

### III. Discussion

#### A. Liability

##### i. Breach of Fiduciary Duty under Section 502(a)(2) of ERISA

The plaintiffs allege that Ms. Ross is a fiduciary and therefore is personally liable for the delinquent contributions. Under ERISA, a person is a fiduciary to the extent that he or she, among other actions, "exercises any authority respecting the management or disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A). The definition of fiduciary is functional. *Wilimington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 343 (4th Cir. 2007). The question is whether the person or entity has actually performed any of the functions of a fiduciary as defined by ERISA. *Id.* ERISA imposes a duty on fiduciaries to "discharge [their] duties with respect to a plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(1)(A).

In some instances, a corporate officer can be held personally liable for a breach of fiduciary duties. *See Connors v. Paybra Min. Co.*, 807 F. Supp. 1242, 1247 (S.D. W. Va. 1992) (Haden, J.). A corporate officer may be a fiduciary if the plaintiff establishes that (1) "plan assets are at issues," (2) "the individual in question exercised authority or control relating to the management or disposition of such assets," and (3) "the putative fiduciary breached his or her fiduciary duty as to the plan assets." *Id.* at 1246.

According to the uncontested facts, Ms. Ross signed both Acceptance of Agreement forms for the CBAs. When Accurate Pro-Cut LLC did comply with its payment or reporting obligations, Ms. Ross signed the checks and remittance reports that were sent to the plaintiffs. Once the contributions became due and owing, they became plan assets. As Ms. Ross signed the checks, she

exercised authority and discretionary control over the assets. Therefore, Ms. Ross was a fiduciary to the extent she exercised control over those assets. By diverting the plan funds, she failed to act "solely in the interest of the participants and beneficiaries" of the plans, and thus breached her fiduciary duty. *See* 29 U.S.C. § 1104(1)(A).

### ii.  Delinquent Contributions under Section 515 of ERISA

The plaintiffs are seeking unpaid contributions, liquidated damages, interests, attorney's fees, and costs (including audit costs) under Sections 502(g)(2) and 515 of ERISA. *See* 29 U.S.C. §§ 1132(g)(2), 1145. As discussed above, the CBAs required the defendants to make fringe contributions and deductions to the plans. (*See* Ex. B, Heavy and Highway Agreements [Docket 38-1], at 24-25). The defendants also agreed to pay liquidated damages, interest, audit costs, and legal costs and fees. (*See* Agreement and Declarations of Trust [Docket 38-1], at 38-52). In support of these allegations, the plaintiffs filed the affidavit of Steven L. Smith, the administrator of the trust funds. (*See* Ex. C, Pls. Aff. in Supp. of Default J. [Docket 38-1], at 23-24). Mr. Smith states that the defendants did not file any contribution reports and did not make payments to the plaintiffs during 2009. (*Id.* at 24). Referring to the audit conducted on August 29, 2014, Mr. Smith asserts that the defendants owe $28,360.55 in deductions and contributions for the year of 2009. (*Id.*; Ex. D, August 29, 2014 Audit [Docket 38-1], at 25-33).

These uncontested facts support the plaintiffs' claim for delinquent contributions under Section 515 of ERISA, which provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. The plaintiffs also state that in a successful action under Section 515, the court must award unpaid contributions, interest on the unpaid contributions, liquidated damages, reasonable attorney's fees and costs, and "such other legal and equitable relief as the court deems appropriate." 28 U.S.C. § 1132(g)(2). Therefore, the plaintiffs well-pleaded allegations support their requested relief. As I find their allegations sufficient under Section 515, I do not address the plaintiffs' breach of contract claim under Section 301 of the LMRA.

The plaintiffs claim that the defendants owe them a total sum of $109,511.81. The plaintiffs rely on an audit conducted on August 29, 2014, which breaks down the defendants' liability as follows:

| | |
|---|---|
| Liability (Contributions and Deductions) | $28,360.65 |
| Interest through August 29, 2014 | $68,718.72 |
| Attorney Fees & Costs through October 31, 2012 | $11,907.44 |
| Audit Cost | $525.00 |
| Total | $109,511.81 |

Under Section 502(g)(2), if judgment is entered in favor of the plan on a Section 515 claim, the court *must* award the following:

(**A**) the unpaid contributions,

(**B**) interest on the unpaid contributions,

(**C**) an amount equal to the greater of—

(**i**) interest on the unpaid contributions, or

(**ii**) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under

8

>    Federal or State law) of the amount determined by the court under
>    subparagraph (A),

> **(D)** reasonable attorney's fees and costs of the action, to be paid by the
>    defendant, and

> **(E)** such other legal or equitable relief as the court deems appropriate.

29 U.S.C.A. § 1132 (A)-(E).

Unpaid contributions are determined by the terms of the plan. *See Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021, 1024-25 (4th Cir. 1997). The CBAs require the defendants to make hourly fringe contributions and deductions to the various funds. (*See* Ex. B, Heavy and Highway Agreements [Docket 38-1], at 24-25). As discussed above, the plaintiffs estimate that the defendants owe $28,.65 in unpaid contributions. Steven A. Hardin, the CPA who conducted the August 29, 2014 audit, estimated that Timothy Flowers worked 910 hours based on a single pay stub provided by Mr. Flowers and Mr. Flowers's W-2. (*See* August 29, 2014 Audit [Docket 38-1], at 26). Mr. Hardin estimated that Nick Ledford worked 910 hours and Robert Ross worked 455 hours. This estimate was based on Mr. Flowers's affidavit that Mr. Ledford worked the same hours as Mr. Flowers and that Mr. Ross worked half as many hours as Mr. Flowers. (*Id.*; *see also* Ex. F, Timothy Flowers Aff. in Supp. of Default J. [Docket 38-1], at 36). After reviewing the applicable rates in the CBAs, Mr. Hardin concluded that $28, 360.65 in unpaid contributions were due. (*See* August 29, 2014 Audit [Docket 38-1], at 27-32).

"Unlike factual allegations as to liability, the Court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations." *Mink v. Baltimore Behavioral Health Inc.*, No. WDQ-11-1937, 2012 WL 6043796, at

*2 (D. Md. Dec. 4, 2012) (citation omitted). Although the plaintiffs have pleaded sufficient facts to show that they are entitled to damages, the plaintiffs have not provided me with sufficient evidence to calculate the amount of damages with reasonable certainty. The current documentation is too speculative, and thus I am unable to verify the plaintiffs requested relief with any accuracy. Although the resolution of this action has been delayed, I **FIND** a hearing is necessary in order to verify and compute the damages sought by the plaintiffs. As I cannot verify the amount of unpaid contributions, I also cannot determine the amount of interest and liquidated damages due to the plaintiffs. Finally, with respect to attorney's fees, the plaintiffs' counsel has failed to provide the hours he worked and the rate he charged. Without this documentation, I cannot complete the required lodestar analysis to determine the reasonableness of his fees. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) ("In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate."). Accordingly, the plaintiffs' motion for sum certain default is **DENIED.**

### IV.     Conclusion

For the reasons discussed above, the plaintiffs' Motion for Sum Certain Default Judgment by the Court Against Accurate Pro-Cut LLC [Docket 38] is **DENIED**. The court **SCHEDULES** a hearing to facilitate default judgment for October 1, 2014, at 10:00 a.m.

ENTER:          September 5, 2014

10

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE